Ms. Birma? Good morning, Your Honors. May it please the Court, my name is Erica Birma and I represent the appellant, Willie Woods, in this matter. This appeal presents two issues, specifically that the government failed to meet its burden as it relates to the reckless disregard or knowing disregard of the ages of minor A and also as it failed to meet its burden that Mr. Woods recklessly disregarded or knowingly disregarded the age of minor B. When we were talking about the jury. Your brief did not address the audiotapes of phone calls that were presented to the jury. Would you like to address now whether the defendant's concessions to those audiotapes is sufficient on the issue of his knowledge of the girls' young ages? Thank you, Your Honor. To address phone call number one, which was made between minor B and the defendant, Mr. Woods says that everything is out and done, but it's unclear as to what he's referring to. Is he referring to that the government's position is that it's out and done, meaning the ads are out and the girls have been going on dates, but also it says out and done, meaning that this whole situation had concluded at the time. But it's also there's inconsistency as to what he learned when, because he acknowledges that minor A was young, naive. He refers to those in the call. How about underage? In call one, he refers to acknowledging that he learned after the fact that the minors were underage in call one. And don't the tapes also show that he and others in the conspiracy used force, coercion, fraud to gain compliance? They withheld food. They refused to let them go. They threatened to leave them in dangerous neighborhoods. I mean, don't the tapes do all of that? The tape one, or the call one, excuse me, kind of talks about is after, again, is after the fact. This is when minor B had been contacted by the FBI, and she is speaking with Mr. Woods after the fact. And there is some dispute as to the food, because minor A testified that she didn't have access to food. But then on cross-examination, minor A admitted that she didn't try to go into the kitchen and obtain any food. And so minor A had access to food. But I think that the evidence is still insufficient as to the age of minor A. While the government did introduce their birth certificates and their photographs, a birth certificate, that knowledge can't be imputed upon the defendant because he didn't know at the time that minor A was underage. Well, wouldn't it be pretty unlikely to think that a 14-year-old was actually 18? Well, unfortunately, Your Honor, the record is silent as to, yes, there were photographs introduced from the newspaper ads or the magazine ads, the Backpage.com ads, but the record's silent as to, yes, that's how she looked at the time, but we don't know chronologically how she looked. I mean, does she look chronologically 14 or does she look chronologically older? The record is silent on that fact. But I thought it was odd that we didn't get a copy of those photos as part of the record, you know, under a protective order given the circumstances. Yes, Your Honor. I don't know if she does look chronologically, and it's the same with minor B as well. I see that my time is almost up. 14-year-olds don't look like 18-year-olds. They can, Your Honor. How do you know? How do I know? I coach. But, no, there are some that do look chronologically 18. But certainly the presumption would be that he knew she was under 18. Well, the presumption is, well, I mean, under the sufficiency of the evidence, the evidence is presumed most favorable to the government. Yes, it is, Your Honor. Thank you. Okay, thank you, Ms. Birma. Ms. Church? Good morning, Your Honors, and may it please the Court, my name is Megan Church. I represent the United States. The evidence when viewed in the light most favorable to the verdict, as this Court must do, demonstrates that there was overwhelming evidence that Willie Woods knew that Kaylee was a minor, that Jade was a minor, and that forced fraud or coercion were used to cause those girls to engage in acts of prostitution. And with respect to Your Honor, we were happy to supplement the record with photos taken at the time the girls were engaging in acts of prostitution. And when the FBI first encountered them. Additionally, the jurors had an opportunity to observe these girls when they testified. And they had the photos, right? Absolutely, Your Honor. They had multiple copies of the multiple advertisements that were used by the defendant and his co-conspirators to post these girls in online advertisements for sex. Those recorded phone calls were the best evidence of the defendant's admissions as to his knowledge that those girls were minors. While the calls occurred after the defendant was engaging in prostitution with those girls, he was recounting his understanding at the time of the girls' ages and his specific conversations with minor A, with Jade, about how she told him while sitting in the couch at his house that she was 16. He acknowledged that. Kaylee was 14 years old at the time. She was there with other minors. She was asking questions and making statements that led Willie Woods to question how old she was. Why was she always asking for her mother? He wondered whether she was old enough to even be out. That's what the defendant said in those conversations. And the defendant absolutely acknowledged that he used force, fraud, and coercion on Kaylee himself when he withheld food and her cigarettes when she refused to have sex with him. He also acknowledged that Jade was struck by Mariah at the direction of co-defendant Malik McKee when she was caught having sex for free. That was the environment that those girls were in when the defendant was using them and selling them for sex. All of the evidence demonstrated that he knew that they were underage and that force, fraud, and coercion were used both in Iowa and then when they came here to Chicago. On top of that, the defendant took the stand and testified. He denied the allegations and said basically he was just some guy who was confined to his room with the exception of the time when he came out and cooked dinner for everybody. It was absurd. The jury was able to weigh and determine his credibility themselves, and they necessarily rejected it with its verdict. So, Your Honors, we ask unless there's any questions that you affirm the conviction and sentence of Willie Woods. Thank you, Ms. Church. Ms. Birmer, do you have anything further? Just briefly, Your Honor, to address the government's statements about call one, about the conversation with minor B about her age at the time. She was inconsistent at best about when she told him about her age because in the phone calls, again, after the fact, she brings up the fact that she was underage. But at the time, she informed Mr. Woods that she was 18 and that she was of age. And for those reasons, I do believe that there's insufficient evidence to support the verdicts in counts two and three. Thank you, Your Honors. Okay, thank you very much.